## NOBLE and others *vs.* HALLIDAY.

By statute (2 *R. S.* 464, §§ 41, 42; *id.* 469, §§ 67, 68, 72; *id.* 43, § 12) whenever a receiver of an insolvent corporation " *shall show by his own oath or other competent proof*," that any person is indebted to the corporation, or has property of the corporation in his custody or possession, the officer to whom the application is made shall issue a warrant to bring such person before him for examination. Under this statute it is sufficient for the receiver, who applies for a warrant, to swear to the facts *on information and belief*.

Accordingly, where the receiver of an insolvent corporation applied for a warrant under the above statute, and showed the facts only by his own oath on his information and belief, and a warrant was issued upon which the person proceeded against was taken and brought before the officer; *held*, in an action brought by such person against the receiver and others acting under the warrant for an assault and battery and false imprisonment, that the warrant was a good justification.

Under the above statute, a person having in his custody, *as administrator* of a deceased person, effects of the corporation, or indebted as such administrator, is liable to be proceeded against; and where the sworn petition, on which the warrant was granted, stated that such person had property of the corporation in his custody, either individually *or as administrator*, &c. held good.

ON error from the supreme court. Halliday sued Noble, Livingston and Lamberson, in the superior court of the city of New-York, for an assault and battery and false imprisonment. On the 20th of July, 1841, Noble, one of the defendants, was appointed by the court of chancery receiver of the property and

effects of The New-York Northern Fire Insurance Company. On the 24th of November, 1841, Noble, as such receiver, presented a petition to the recorder of the city of New-York, and obtained from that officer a warrant directed to the sheriff of that city and county, commanding him to bring the plaintiff before the recorder for the purpose of being examined. The warrant was duly served and the plaintiff held in custody under it; and that was the assault, &c. for which the action was brought. The question presented by the pleadings, on demurrer, was, whether the petition and oath annexed thereto, on which the warrant issued, were sufficient to authorize the issuing of such warrant. The principal facts required to be shown to the officer, were stated and sworn to on the *information and belief* merely of the petitioner. That was one objection to the validity of the proceeding. Another was, that the petition stated that the plaintiff Halliday, either individually *or as administrator* with the will annexed, of Robert Halliday deceased, (without stating which,) had in his hands and custody property and money which belonged to the petitioner as such receiver; and it was insisted for the plaintiff that he was not liable under the statute to be proceeded against as an administrator, and therefore that the petition being in the alternative did not give the officer jurisdiction. The superior court gave judgment against the plaintiff; which, on error, was reversed by the supreme court. (1 *Barb. Sup. Court Rep.* 137.) The defendants bring error into this court. The statutes defining the powers of Noble as such receiver, and under which the proceeding in question was instituted, are material to a proper understanding of the case; and these are sufficiently set forth in the opinion of RUGGLES, J.

*L. Livingston*, for plaintiffs in error.

*E. Sandford*, for defendant in error.

RUGGLES, J. The question raised by the pleadings in this case is, whether the petition presented by Noble, the receiver of

The New-York Northern Insurance Company, verified by his own oath as to the principal facts, on his information and belief, was sufficient to give the recorder jurisdiction to issue the warrant. If it was, the arrest of Halliday was legal, and his action, founded on the supposed illegality of the arrest, must fail.

The legality of the warrant is here drawn in question in a collateral action ; and for the purpose of maintaining the action it is necessary to show not merely that the recorder's decision in granting the warrant was erroneous, but that it was absolutely void.

The authority of the receiver to apply for and obtain the warrant against Halliday will be found in the following sections of the revised statutes, by which the receiver of insolvent corporations is charged with like duties and clothed with the same powers as are by another section given to trustees and assignees in cases of insolvency. (2 *R. S.* 464, §§ 41, 42 ; *id.* 469, §§ 67, 68, 72; *id.* 35, § 1.) The nature and extent of the powers and duties of trustees of insolvent debtors will appear by 2 *R. S.* 40, 41, 42, §§ 6, 8, 12. The latter section is that under which the warrant issued. It is as follows :

"§ 12. Whenever the trustees shall show by their own oath or other competent proof, to the satisfaction of any officer named in the first section of the seventh article of this title, or of any judge of a county court, that there is good reason to believe that the debtor, his wife, or any other person, has concealed or embezzled any part of the estate of such debtor, vested in the said trustees; or that any person can testify concerning the concealment or embezzlement thereof; or that any person who shall not have rendered an account as above required, is indebted to such debtor, or has property in his custody or possession, belonging to such debtor ; such officer or judge shall issue a warrant, commanding any sheriff or constable to cause such debtor, his wife, or other person, to be brought before him at such time and place as he shall appoint for the purpose of being examined."

Upon a careful examination of the case I am satisfied that the judgment of the supreme court was erroneous; and that the

Noble *v.* Halliday.

error arose mainly from a misconception of the nature of the proceeding against Halliday. It was in substance a proceeding to obtain his testimony as a witness, and not a proceeding against him as a party for relief by judgment or decree. It is true he was an interested witness and was called to testify against his interest, and in that respect he stands in the situation of a defendant in a bill of discovery, where the sole object of the proceeding is to obtain the defendant's evidence under oath. The proceeding authorized by the statute appears to have been intended as an informal, but prompt and effective substitute for the tedious and expensive process on a bill of discovery in a court of equity. The necessity and utility of the proceeding are too obvious to require elucidation. The property of an insolvent corporation is usually in the hands of the officers and agents under whose management it has become insolvent. They are frequently its largest debtors; and the power of compelling them and all others to disclose its condition, and of ascertaining by that means where its property is, in whose hands, under what claim or pretence it is held, and who are its debtors, is indispensable to the interest of its cred itors for whose benefit it is to be collected and distributed by the receiver.

It seems to have been supposed that an executor or administrator cannot be called upon to testify, under this statute, in relation to a debt due from his testator or intestate, or in relation to property in his hands claimed in his representative ca pacity. I am at a loss to know whence that idea could have arisen. Certainly not from the statute itself. If the administrator have in his custody and possession property belonging to the corporation, it is immaterial by what right he claims it. He is bound to testify in relation to it. And if as administrator he is indebted to the corporation, there is nothing in the statute to excuse him from disclosing, under oath, what he knows in relation to such indebtedness. Such a case is embraced within the general terms of the 12th and 13th sections of the statute.

The cases of *Jackson* v. *Walsworth*, (1 *John. Cas.* 362,) and *Hinds' case*, (9 *Wend.* 465,) have no application to this pro-

Noble *v.* Halliday.

ceeding for discovery. Those cases relate to attachments against the property of an absconding debtor under 2 *R. S.* 3, 4. Proceedings under that statute have no resemblance or similarity to the proceedings against the debtor of an absconding debtor to compel him to testify. To authorize an attachment against an absconding debtor, the creditor must, by the express terms of the statute, have a demand against him personally. (2 *R. S.* 3, § 3.) But the power to examine those who have his property, or who owe him money, is not thus limited. The statute would be exceedingly defective if it exempted those who owe in a representative capacity from liability to answer like all others as to their indebtedness. Executors and administrators are not thus exempted upon a bill in equity for a discovery, and the power under the statute to call for a disclosure is as ample as under such a bill. The receiver therefore was right in calling on Halliday to testify in relation to property that he held, or money that he owed the corporation as administrator with the will annexed of a deceased person. In that character he was liable to an action at law by the receiver; and the power of discovery was undoubtedly intended to be co-extensive with the right to sue.

It constitutes no good objection to the petition for the warrant, that the grounds on which it was demanded were stated in the alternative. If it had been a declaration in a suit at law, or an indictment, or a proceeding under the act to abolish imprisonment for debt, by which Halliday might have been committed to jail until he paid a debt, the objection would have been a good one. In these cases the plaintiff, or party prosecuting, is supposed to know the ground of his proceeding; and he is bound to state it with precision, in order that the defendant may know what he is to controvert; for he controverts at the peril of his property or his liberty. But this was a proceeding of a different character. The object was inquiry, and nothing else; and the receiver could not be required to state positively facts which he did not know, and which he could not be supposed to know until the inquiry should be answered. In bills of discovery the complainant's allegations are usually stated in the

alternative.   They are so stated in judgment creditors' bills, and in others of the like nature, although relief as well as discovery is sought.   No hardship was imposed on Mr. Halliday in compelling him to answer allegations thus stated.   Nor is there any just objection on his part to the discovery, at the same time, of matters which might affect him individually, and of others which might affect him in a representative capacity. The statute authorizes an informal discovery; and it is much better that it should all be done at one time and under the same process, than to have two distinct applications and warrants.

The remaining question as to the sufficiency of the petition is, whether the facts set forth in it were properly verified.   It was sworn to by Noble, in the form heretofore prescribed in the court of chancery for the verification of bills of discovery, that is to say, as to the principal facts on his information and belief.   In determining this question the statute under which the warrant issued must be our guide.   This statute (2 *R. S.* 43, § 12,) does not require the receiver to establish the truth of his petition by positive proof.   It does not require him to give positive proof of the facts and circumstances from which its truth is to be inferred.   It requires him to show to the satisfaction of the officer *that there was good reason to believe* that Halliday was a debtor to the corporation, or that he had its property in his possession; and it made the receiver's own oath evidence for that purpose.   It also authorized "other competent proof" instead of the oath of the party; but the makers of the statute could not have intended proof competent to establish the facts in a legal sense, as before a jury.   The facts are not required to be so established; and proof sufficient to create a rational belief is all that the language calls for, and this may fall far short of that which is necessary to authorize a verdict.   In all other respects the statute is silent with respect to the nature and quality of the proof on which the officer is to exercise his judgment.

By the act of 1811, for relief against absconding debtors, from which the provisions in the present statute are taken, (*see* 1 *R L.* 160, § 12,) a warrant in a case like the present might

have been issued by any justice of the peace, upon t.1e applica
tion of the trustees against "any person known or *suspected*
to detain any part of the estate or to be indebted to it." The
present statute has taken this power away from justices of :he
peace, and has conferred it upon officers of a higher grade.
(2 *R. S.* 34, § 1.) And instead of allowing the warrant against
any person whom the trustees might *suspect* to be indebted to
the estate, it is now allowed, wherever the officer has "good
reason to believe," that any person is so indebted. But the ob-
ject and policy of the law is unchanged; and it is apparent
that the legislature intended to permit examinations of this
nature to be made at the instance of receivers and trustees
upon very slight proof; a shade stronger, indeed, than mere
suspicion; but it is clear that legal certainty is not required.
It would have been absurd to require it, or to suppose it could
be had until after the arrest and examination.

The proof in this case was that the receiver was informed
and believed that Halliday was indebted to the corporation
and had its property in his possession. According to the case
of *Fitch, an absent debtor*, (2 *Wend.* 298,) this was sufficient.
In that case the creditor was required by the statute, (1 *R. L.*
163, § 23, *act of* 1801,) to make proof by two witnesses to the
satisfaction of the judge, of the residence of the debtor out of
the state. Two witnesses swore to *their belief* that he resided
out of the state, without setting forth the grounds of such belief.
The proof was held to be sufficient; and in the case of
*Haynes, ex parte*, (18 *Wend.* 614,) Mr. Justice Cowen says,
"on such a statute, with the high authorities to which I have
referred, I think I should not hesitate in receiving the oath of
mere belief." The belief of the applicant was, in that case,
regarded by those eminent judges sufficient to *establish a fact*
to be proved to the satisfaction of the judge. The statute, in
the present case, does not require any fact to be established by
proof; it demands only that the judge shall be satisfied that
there is good reason to believe the fact.

When the warrant against Halliday was issued, the officer
had before him, as the basis on which his belief might be found-

Noble v. Halliday.

ed, not only the belief of the receiver, but the information on which the receiver's belief was founded. The case as it existed in the mind of the receiver, was laid before the officer. Information constitutes, in many cases, ground of rational belief. In our daily and most important transactions we act on belief resting on that foundation only. The fact that this information had been given to the receiver was legally proved. The truth of the information was not proved; but I think the recorder might properly take notice of the fact that such information had been given, and if it operated on his judgment as it seemed to have affected the mind of the receiver, by creating a belief that Halliday was indebted to the corporation, it was all the act required. The act does not require the certainty of legal conclusion, as to the facts on which the application is grounded.

In regard to the proof on which the warrant, in cases like the present, is to issue, the statute differs entirely from that which authorizes attachments against absconding debtors; (2 R. S. 3, § 5;) and from that which authorizes attachments and warrants in justices' courts. (2 R. S. 229, § 19; Laws of 1831, ch. 300, § 35.) In those cases the facts and circumstances to establish the grounds on which the application is made must be stated and proved. Such facts are made the only evidence on which the magistrate can act, and the belief of the applicant as one of the ingredients of proof is excluded. It differs also from that part of the act to abolish imprisonment for debt, which authorizes warrants against fraudulent debtors. (Laws of 1831, ch. 300, §§ 3, 4.) The party applying for a warrant under that act must give evidence establishing one or more of the frauds specified in those sections, and facts must be shown to satisfy the judge that the fraud actually exists; and not merely to show there is reason to believe that it exists. The decisions, therefore, as to the proof required under these statutes, are not applicable to the present case. The objects and consequences resulting from the granting of process under those statutes are entirely different from the object and purpose of the warrant in the present case. They are proceedings to obtain a judgment

or decree. This is to obtain evidence. There he must controvert the allegation or pay the debt. Here he is discharged from the process on giving his testimony.

I am unable to perceive any good reason, independent of the statute, why the proof to compel Halliday to testify should be any stronger or more formal than that on a bill of discovery, or indeed than that on which an attachment is granted against an ordinary witness for non-attendance under a subpœna. Such a witness may be subpœnaed without any proof of his materiality, and is bound to attend; he is liable to a penalty of fifty dollars for non-attendance. (2 *R. S.* 400, § 43.) An attachment issues against him on proof of his having been served with a subpœna and of his failure to attend. (*Id.* 441.) And where he is summoned to appear before any judge or officer to give testimony or have his deposition taken, such judge or officer, on his failure to attend, and on proof of service of the summons and of such failure, is required to issue his warrant to bring him before the officer to be examined; and for refusing to be examined when brought before the officer, the witness is committed to jail until he submits. No proof of the materiality of his testimony, or of the necessity of taking it, is required.

The statute, however, under which the warrant issued in this case, must govern. But if there be any doubt about its meaning, as to the proof required to obtain the warrant, it should receive that construction which is most in conformity with proceedings having the like nature and object. I am satisfied that the petition and warrant were in all respects legal. They constituted a valid defence to the action brought by Halliday againt those who acted under them.

But it seems to be supposed that the plaintiff is, nevertheless, entitled to judgment, on the ground that Noble, by his demurrer to the plaintiff's replication to his second plea, admitted on the record that Noble did not show to the recorder "good reason to believe that Halliday was indebted to the corporation," &c.

For the purpose of understanding the force of this objection,

it is necessary to make a brief statement of the pleadings between Halliday and Noble.

1. Halliday declared against Noble for an assault and battery, and false imprisonment. 2. Noble pleaded a justification under the warrant issued by the recorder of New-York, setting it forth in substance. 3. Halliday replied, setting forth at full length Noble's petition to the recorder for the warrant, and concluded his replication with a traverse denying that Noble " had shown, by his own oath, to the satisfaction of the recorder, that there was good reason to believe that the plaintiff, Halliday, was indebted to the corporation, or had its property in his possession." To this replication Noble demurred, and Halliday joined in demurrer.

It is now contended that by this demurrer Noble admitted that he did not show on his oath, to the satisfaction of the recorder, that Halliday was so indebted, &c. But this is a mistake. Halliday's replication is bad, because it puts his case upon a supposed defect in the petition, which defect does not exist. The petition for the warrant was good; and the plaintiff, Halliday, by setting it forth in his replication, showed that Noble had made all the proof necessary to entitle him to the warrant from the recorder. The traverse by Halliday was repugnant to the previous part of the replication. It denied what he had just previously shown was true, to wit, that Noble had made the necessary proof to obtain the warrant. Noble was right in demurring. Halliday had shown in his replication all that was necessary to Noble's defence. If the traverse was not a contradiction of the matters of fact previously stated in the replication, it was nothing but a denial of the legal effect of the petition for the warrant. This was a question of law, and not traversable. It is a familiar principle that a demurrer confesses nothing except that which is well pleaded.

The cases of Livingston and Lamberson are governed by the same principles which are applicable to that of Mr. Noble. They are alike in all those respects in which the sufficiency of the defence is questioned.

The special pleas would have been bad on special demurrer,

on the ground that each attempts, by the averment that the acts mentioned in it " are the several trespasses mentioned in the declaration," &c. to make that an answer to all the counts which is in fact an answer to one count only. But by replying, the plaintiff has lost the benefit of that objection. (1 *Ch. Pl.* 450, 559, 7*th Am. ed. ; 7th Lond. ed.* 429, 553 ; 23 *Wend.* 488; *Arch. N. P.* 497, *Lond. ed. of* 1845.)

On the whole, the defence set up by the defendants under the recorder's warrant, appears to be a good one ; and to have been substantially well pleaded.

The judgment of the superior court was not erroneous. That of the supreme court should be reversed.

JEWETT, C. J., and GARDINER, J., also delivered opinions in favor of reversing the judgment on similar grounds.

BRONSON, J. (dissenting.) I cannot agree in the result to which a majority of my brethren have arrived. This is not merely a question about the examination of a witness. It is a question of personal liberty. The plaintiff has been arrested ; and, as I think, without lawful authority. The necessary facts were to be shown, to the satisfaction of the officer, by the oath of the receiver, " or other competent proof." (2 *R. S.* 43, § 12.) *Information and belief* that a man owes a particular debt, or that he has money or property in his hands belonging to another, are no proof whatever of the fact : especially where as in this case, the deponent tells who gave him the information, and assigns no reason for not producing the affidavit of his informant. The recorder had no right to be satisfied without some proof; and there was none at all.

I do not doubt that the defendants acted honestly, and without any improper intentions; but that is not enough where a man has been imprisoned w'thout authority.

Judgment reversed.